# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

CASA DE MARAVILLA, LLC,                                    Civil Action No. 4:25-cv-6183

*Plaintiff,*

v.

BONNER, WILLIAM *et al.,*
*Defendants.*

### SUPPLEMENTAL AFFIDAVIT OF PROFESSOR MANUEL A. GÓMEZ

1. The statements in this Supplemental Affidavit are true and correct to the best of my knowledge and experience. I have prepared this Supplemental Affidavit to support Defendants' Motion to Dismiss Plaintiff's Casa de Maravilla LLC's ("CDM") First Amended Complaint filed on March 24, 2026 ("First Amended Complaint"). If called to testify as a witness in this case, I could and would testify as follows:

2. Counsel for Defendants ("Defendants") asked me to prepare this Supplemental Affidavit to opine whether Nicaragua is an adequate alternative forum in which CDM may seek legal remedy regarding the conduct alleged in the First Amended Complaint. I received a copy of the First Amended Complaint and had an opportunity to review it to prepare this Supplemental Affidavit.

3. Having reviewed the First Amended Complaint, my conclusions regarding the availability and adequacy of Nicaragua to hear and adjudicate this dispute remain unchanged from the Original Complaint. As a result, I therefore reaffirm all opinions, analyses, and conclusions expressed in my original Affidavit ("First Gómez Affidavit") submitted to this Court and incorporate them by reference herein.

4. Nicaragua is an available forum because Nicaraguan courts possess jurisdiction over all parties and claims in this litigation. Under Nicaraguan law, disputes concerning real estate property located in Nicaragua fall within the jurisdiction of Nicaraguan courts. Moreover, CDM has already invoked Nicaraguan jurisdiction by filing a Request for Declaratory Summary Order in the Pending Nicaragua Action in 2025. The Nicaraguan court has accepted this Request, legal proceedings are underway, and, as the First Amended

1

Complaint acknowledges, "a decision on the merits remains pending".[1] The relative limitation in scope of the Pending Nicaragua Action, which concerns an easement dispute involving only some of the parties, does not alter my conclusion that Nicaragua is an available forum for this and any other disputes regarding property rights affecting all the parties to this litigation. As stated in the First Gómez Affidavit, the Pending Nicaragua Action demonstrates CDM's access to and familiarity with the Nicaraguan judicial system. Nicaraguan courts are available to hear and adjudicate any and all disputes affecting property rights in that country. Accordingly, any conduct that, as alleged in the First Amended Complaint, "has affected hundreds of property owners at Rancho Santana, the full dimension of which are not yet known",[2] must be adjudicated in Nicaragua, by Nicaraguan courts, and under Nicaraguan law.

5. Nicaragua provides an adequate alternative forum for resolving whether CDM must pay the disputed dues and fees related to its Nicaraguan real estate property. Nicaraguan law comprehensively governs all aspects of real property ownership, use, limitations, and homeowners' association governance. Nicaragua's legal framework affords constitutional protection to property rights and provides robust legal remedies for property related disputes. CDM has already sought some of those remedies in Nicaragua, the courts of that country have acted accordingly and will adjudicate based on the applicable Nicaraguan laws, which are precisely meant to govern all Nicaragua property-related disputes.

6. Nicaragua provides an adequate alternative forum for resolving whether CDM's property use is restricted by the various Covenants, Community Guidelines, Rental Guidelines, Broker Regulations, and Building Guidelines alleged in the Complaint. Nicaraguan law comprehensively addresses the creation, interpretation, and enforcement of real property restrictions, including private covenants, homeowners' association rules, and contractual limitations on property use. Nicaragua's Civil Code and specialized legislation provide clear legal standards and adequate judicial remedies for disputes concerning property encumbrances and use restrictions.

---

[1] First Amended Complaint at ¶ 125.

[2] Id. at ¶127.

7. Nicaragua provides an adequate alternative forum for resolving whether co-Defendant Rancho Santana, Inc. & Cía Ltda. ("Rancho SRL") improperly restricted contractor access to CDM's property or improperly interfered with water and electricity services. Nicaraguan law comprehensively governs interference with contractual relations, property access rights, and utility service obligations, including the rights and duties of property developers, homeowners' associations and property owners. Nicaragua's legal framework affords constitutional protection to property rights and provides adequate judicial remedies for claims of improper interference with property use and essential services.

8. Nicaragua provides an adequate alternative forum for resolving whether co-Defendant Rancho SRL trespassed on CDM's property, as cited in the Complaint. Nicaraguan law comprehensively governs trespass to land, property boundary disputes, and unauthorized entry onto real property, including both civil remedies and criminal sanctions for unlawful intrusions. Nicaragua's legal framework affords constitutional protection to property rights and provides adequate judicial remedies for trespass claims, including damages, injunctive relief, and restoration of exclusive possession.

9. Nicaragua offers more adequate access to evidence than the United States regarding any evidence, relevant sites, witnesses, compliance with judicial and administrative orders, and the practicalities and expenses associated with a litigation seeking to resolve the matters mentioned in the preceding paragraphs.

10. Public interest factors weigh heavily in favor of adjudicating this dispute in Nicaragua. Nicaragua has a substantial interest in regulating and adjudicating disputes concerning real property within its territory, particularly given that property rights enjoy constitutional protection and are subject to comprehensive regulatory oversight. Nicaraguan courts are better positioned to interpret and apply Nicaraguan property law, homeowners' association regulations, and constitutional property protections, ensuring consistent application of local public policy and regulatory standards.

FURTHER AFFIANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 6, 2026 in Miami-Dade County, Florida.

_____
Manuel A. Gómez

4